# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL ACTION NO. 1:14-CV-00230-GCM

| | |
|---|---|
| LISA O. JOLLEY, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| CAROLYN W. COLVIN, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 9) and Memorandum in Support (Doc. No. 10), both filed January 22, 2015; and Defendant Commissioner's Motion for Summary Judgment (Doc. No. 11), filed on April 3, 2015. On April 10, 2015, Plaintiff sought leave to file a supplemental brief addressing the import of the Fourth Circuit's decision in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). (Doc. No. 13) Plaintiff filed a Supplemental Memorandum on April 28, 2015 (Doc. No. 15), and Defendant filed a Response in Opposition on May 12, 2015. (Doc. No. 16) Plaintiff, through counsel, seeks judicial review of the Administrative Law Judge's determination, upheld by the Appeals Counsel, that she was not disabled under the Social Security Act ("the Act"). For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **GRANTED**, Defendant's Motion for Summary Judgment is **DENIED**, and the Commissioner's Decision is **VACATED**. This matter will be remanded to the Social Security Administration for further proceedings consistent with this order.

# I. BACKGROUND

On January 25, 2011, Plaintiff Lisa O. Jolley filed an application for a period of disability and disability insurance benefits, as well as an application for supplemental security income. (Tr. 51)  Plaintiff alleged a disability onset date of December 2, 2009. (Tr. 51)  Her claims were initially denied on March 25, 2011, and were again denied upon reconsideration on September 5, 2011. (Tr. 51)  Plaintiff filed a written request for a hearing on October 20, 2011. (Tr. 51)  A hearing was held on February 15, 2013 before Administrative Law Judge ("ALJ") Wendell M. Sims in Charlotte, North Carolina. (Tr. 51)  Plaintiff, represented by counsel, testified at the hearing, as did a vocational expert. (Tr. 51)

The ALJ issued a written decision on March 7, 2013 finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 51-63)  On April 14, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1, 10-11)  The Appeals Council noted that Plaintiff had submitted new evidence, namely treatment records dated between April 24, 2013 and August 16, 2013, but found that this evidence concerned a later time than the ALJ's order. (Tr. 11)  For this reason, the Appeals Council found that the new evidence did not affect the ALJ's decision that Plaintiff was not disabled between December 2, 2009 and March 7, 2013.  On July 8, 2014, it notified her that it had set aside its early decision in the interest of considering additional information, but that it was again denying review on the grounds that the newly submitted information did not provide a basis for upsetting the ALJ's decision. (Tr. 1-2)  Thus, the ALJ's decision became the Commissioner's final decision in this case.

Pursuant to 42 U.S.C. § 405(g) Plaintiff has a right to review of the Commissioner's decision.  She filed this timely appeal on September 8, 2014 (Doc. No. 1), and the parties' Motions for Summary Judgment are now ripe for review.

## II.  STANDARD OF REVIEW

Judicial review of a final decision of the Commissioner in social security cases is authorized pursuant to 42 U.S.C. § 405(g) and is limited to consideration of (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* District courts do not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Rather, they must uphold the decision of the Commissioner, even in instances where they would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). In reviewing for substantial evidence, a court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 589. The ALJ, and not the Court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. *Hays*, 907 F.2d at 1456.

The issue before this Court, then, is not whether Plaintiff is disabled, but whether the ALJ correctly applied the relevant law and reached a finding that is supported by substantial evidence.

## III.  ANALYSIS

The ALJ considered whether Plaintiff was "disabled" under the Social Security Act between her alleged onset date of December 2, 2009 and his decision date of March 7, 2013. To

establish that she is entitled to benefits, Plaintiff has the burden of proving she was disabled within the meaning of the Act during this period. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

As an initial matter, a claimant must meet the insured status requirements of the Social Security Act. If the ALJ finds that the claimant was insured during the relevant period, the ALJ uses a five step sequential evaluation process, pursuant to 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920, for determining disability claims. If the ALJ determines that a claimant is conclusively disabled, or not disabled, at any step, the inquiry ends and the ALJ need not proceed to the other steps. Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medically determinable impairment or a combination of impairments that is severe and meets the twelve month durational requirement set forth in 20 C.F.R. § 404.1509 and 20 C.F.R. § 416.909; (3) whether the claimant's impairment or combination of impairments meets or medically equals one of The Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant has the residual functional capacity ("RFC") to perform the requirements of her past relevant work; and, if unable to perform the requirements of past relevant work, (5) whether the claimant is able to adjust to other work, considering her RFC and vocational factors (age, education, and work experience). If the claimant is able to adjust to other work, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i-v); *id*. § 416.920(g). The claimant bears the burden of production and proof during the first four steps of the inquiry. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work is available in sufficient numbers in the national economy which the claimant could perform. *Id.* at 1205 (citation omitted).

Here, the ALJ found that Plaintiff was insured through December 31, 2014, and that she had not engaged in substantial gainful activity since her alleged onset date in 2009. (Tr. 53) At step two, he found that Plaintiff had the following severe impairments: a dislocated left elbow, left shoulder rotator cuff tear, adhesive capsulitis of the left arm, history of asthma, adjustment disorder, and obesity. (Tr. 53) The ALJ also noted that although Plaintiff complained of additional ailments—including cervical and sacroiliac joint issues, as well as plantar fascial fibromatosis—these did not qualify as severe impairments. (Tr. 55-56) At step 3, the ALJ found that Plaintiff did not meet any of the Listings. (Tr. 56-57) Specifically, the ALJ analyzed Plaintiff's mental impairment and found that it did not meet or medically equal the Listing for Affective Disorders. *See* 20 C.F.R. 404, Appendix 1 to Subpart P, 12.04.

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a dental hygienist. (Tr. 61) However, the ALJ also found that Plaintiff had the residual functional capacity to perform light work (lift and carry 20 pounds occasionally and 10 pounds frequently), except that she can "frequently but not constantly push/pull and perform overhead reaching using the left extremity." (Tr. 57) Additionally, the ALJ found that Plaintiff "should avoid concentrated exposure to fumes and hazards," and said she should be "limited to simple, routine, repetitive tasks in a stable environment at a nonproduction pace with occasional public contact." (Tr. 57)

At step five, the ALJ considered Plaintiff's residual functional capacity, along with her age, education, and work experience. (Tr. 61-62) The ALJ explained that Plaintiff was 40 years old at the alleged onset date, and thus defined as a younger individual, who had at least a high school education. (Tr. 61) The ALJ further noted that he need not determine whether Plaintiff's job skills were transferrable because, if he made his decision by reference to the Medical

5

Vocational Guidelines, either transferrable or nontransferable skills would direct a finding of "not disabled" in light of Plaintiff's other characteristics. (Tr. 62) Because Plaintiff had additional limitations, however, and could not perform the full range of light work, the ALJ asked the vocational expert to opine on the availability of jobs that Plaintiff could perform. (Tr. 62) The vocational expert testified that Plaintiff could perform the requirements of the following three occupations: (1) housekeeping/laundry at a hotel/motel (917,000 jobs nationwide, 29,000 locally); (2) final inspector (250,000 jobs nationwide, 10,000 locally); and (3) bench assembler (400,000 jobs nationwide, 15,000 locally). Thus, the ALJ determined that "considering [Plaintiff's] age, education, work experience, and residual functional capacity" she was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 62-63) Accordingly, the ALJ found that during the relevant period Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 63)

On appeal to this Court, Plaintiff presents the following assignments of error: (1) the ALJ failed to adequately explain its reasons for rejecting the opinion of Dr. Schiffern, Plaintiff's treating orthopedic surgeon; (2) new evidence submitted to the Appeals Council warranted remand because filled evidentiary gaps and contradicted the findings of the ALJ; (3) the ALJ failed to weigh the medical opinion of Dr. Hughes, in violation of 20 C.F.R. §§ 404.1527(c), 416.927(c); (4) the ALJ failed to conduct a complete function-by-function analysis of Plaintiff's nonexertional limitations. (Plaintiff's Memorandum in Support at 5-6, Doc. No. 10) In her Supplemental Memorandum, Plaintiff raises an additional argument and suggests that the ALJ failed to conduct a complete function-by-function analysis of Plaintiff's physical RFC, because he did not address Plaintiff's ability to perform certain functions for an entire work day or to reach forward or laterally. (Supplemental Memorandum at 2, Doc. No. 15)

### A. Opinions of Dr. Schiffern and Dr. Hughes

A physician who has observed a claimant's condition over a prolonged period of time is considered a treating physician. *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983). A treating physician's opinion is generally afforded great weight. 20 C.F.R. § 404.1527(d)(2); *id.* § 404.927(c)(2). It is given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's case record. *Id.* When a treating physician's opinion is not entitled to controlling weight, the Court looks to a variety of factors in determining how much weight it should be given: (1) "the length of the treatment and the frequency of examination"; (2) "the nature and extent of the treatment relationship"; (3) the extent to which the opinion is supported by specific, relevant evidence, such as medical signs and laboratory findings; (4) any consistency or lack thereof between the opinion and the record as a whole; and (5) the physician's specialization. *Pittman v. Massanari*, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001); 20 C.F.R. § 404.1527(c). When the ALJ determines that a treating physician's opinion should not receive controlling weight, the decision must include the weight given to each medical opinion in the record. *See* 20 C.F.R. § 404.1527(e)(2)(ii); *id.* § 404.927(e)(2)(ii).

In this case, Dr. Schiffern, Plaintiff's treating orthopedist, opined in April 2012 that Plaintiff was permanently restricted from using her left arm for any work activities. The ALJ found that this opinion was entitled to little weight for two main reasons. First, the decision appeared to the ALJ to be too hasty. The ALJ explained that Dr. Schiffern's opinion followed two reports shortly after Plaintiff underwent shoulder surgery, in January and March 2012, that Plaintiff was doing well. (Tr. 59) On both occasions, Dr. Schiffern determined that Plaintiff's condition did not warrant a prescription for narcotics. The ALJ also noted that when treating

7

Plaintiff's elbow, Dr. Schiffern had continued treating the condition for several months while waiting for it to improve. (Tr. 59) By contrast, when treating her shoulder, he quickly discharged her with a very severe restriction on her shoulder without making specific findings that such a restriction was necessary. (Tr. 59) Second, the ALJ concluded that Dr. Schiffern's opinion contradicted other medical evidence in Plaintiff's case record. Plaintiff's physical therapist, Michael Waters, discharged her in March 2012, after finding that she had met her goal of restoring the ability to perform normal functional related tasks around the home—although he also reported that she had *not* met her goal of restoring her ability to perform work related functions. (Tr. 59) Similarly, Dr. Evans, who evaluated Plaintiff for pain management in August 2012, noted that she had left shoulder issues, but found that they did not require immediate attention. (Tr. 59) Thus, in the ALJ's view, Dr. Schiffern's sudden determination that Plaintiff lacked all use of her left arm for work activities was not consistent with Plaintiff's medical record as a whole.

However, Plaintiff argues that the ALJ failed to assign weight to the medical opinion of another physician in the record, and the Court agrees. Around the same time that Dr. Schiffern opined on Plaintiff's complete inability to use her left arm for any work functions, another physician, Doctor Hughes, rendered a similar opinion that the ALJ failed to expressly consider and weigh. (*See* Tr. 574) The Court agrees that the failure to consider Dr. Hughes's opinion was error. Pursuant to the regulations, when the ALJ determined that Dr. Schiffern's opinion was not entitled to controlling weight, he was required to assign weight to each medical opinion in the record. *See* 20 C.F.R. § 404.1527(e)(2)(ii); *id.* § 404.927(e)(2)(ii). Because the ALJ did not do so, the question is whether that error was harmless. In other words, the ALJ's failure to mention a particular piece of evidence in his decision is not in itself dispositive, and the Court must

8

consider the ALJ's final decision denying benefits is supported by substantial evidence, rendering the failure to mention the disputed evidence harmless.

Here, the ALJ failed to mention medical records pertaining to Plaintiff's treatment by Dr. Jennifer Holly Hughes between December 2008 and February 2010, as well as two letters from Dr. Hughes, dated April 2011 and January 2013. (Tr. 341-353) Plaintiff argues that these records amount to a medical opinion that the ALJ was required to expressly consider and weigh, pursuant to 20 CFR §§ 404.1527(c) and 416.927(c). (Memorandum in Support at 12-13, Doc. No. 10) Defendant argues that no statement within the treatment notes or letters amounts to a medical opinion. The Court agrees with Defendant in several respects. Dr. Hughes's treatment notes seem to consist of Plaintiff's own descriptions of pain or discomfort and do not express any opinion on Plaintiff's "ability to do work-related activities or perform daily activities"; thus, they do not rise to the level of a medical opinion under the regulations. *Phillips v. Colvin*, No. 3:13-CV-00307-MOC, 2014 WL 1713788, at *6 (W.D.N.C. Apr. 30, 2014) (citing 20 C.F.R. § 416.927(a)(2)). Similarly, the letter dated January 2013, is simply a list of impairments labeled "Exam Findings: 1/31/13." Again, the lack of information about the exam or suggestion as to how these impairments impact Plaintiff's ability to perform daily activities or work precludes a finding that they constitute medical opinions.

Dr. Hughes's April 2011 presents a closer question. In that letter, Dr. Hughes opined "[a]t this time, after seeing her this week, I am not sure she would be able to participate in a work conditioning program without causing further setback in her condition and an increase in pain, requiring additional supportive treatment." (Tr. 574) It appears to the Court that this constitutes a medical opinion that the ALJ was required to consider because it did not given controlling weight to Dr. Schiffern's opinion. *See* 20 C.F.R. § 404.15279(c), *id.* § 404.15279(e)(2)(ii).

Moreover, the ALJ discredited Dr. Schiffern's opinion in substantial part because it seemed to contradict the other medical opinions in Plaintiff's record. However, Dr. Hughes's opinion, given the same month that Dr. Schiffern placed a complete restriction on Plaintiff's ability to use her left arm, was that if Plaintiff endeavored to gain enough strength to perform work functions, she would risk a set back in her recovery and an increase in pain. Additionally, Plaintiff's physical therapist, Michael Waters, specifically opined that while she had regained the ability to perform some household functions, she was *not* able to use her left arm for work functions—a finding that the ALJ mentioned but did not explain its reasons for discounting. In short, it appears to the Court that every medical professional to explicitly consider Plaintiff's physical capacity to perform work related tasks found that she was unable to do so. In light of these circumstances, the Court cannot conclude that the ALJ's failure to consider Dr. Hughes's medical opinion was harmless.

### B. New evidence submitted to the Appeals Council

The Appeals Council is required by 20 C.F.R. § 404.970, to review certain decisions of an ALJ. In pertinent part, the regulation provides:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

*Id.* "Evidence is new 'if it is not duplicative or cumulative' and is material if there is a 'reasonable possibility that the new evidence would have changed the outcome.'" *Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011) (quoting *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Medical evaluations that are conducted after the ALJ's

decision "are not automatically barred from consideration and may be relevant to prove a disability" before the examination date. *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012); *see also Savage v. Colvin*, No. 3:12-CV-00394-RJC, 2013 WL 4495194, at *4 (W.D.N.C. Aug. 19, 2013) ("[T]he date on which an examination is conducted is not dispositive.").

In this case, the Appeals Council explained that Plaintiff's newly submitted evidence pertained to examinations conducted after the ALJ rendered his determination that Plaintiff was not disabled between her alleged onset date of December 2, 2009 and its decision date of March 7, 2013. As such, the evidence was not directly relevant and provided no grounds for remand. Plaintiff argues that the new evidence warrants remand because it includes an opinion by Dr. Starling that she is not able to perform "any job which requires the use of the left shoulder, arm, and elbow" because of the "pain that occurs when she uses her left arm and elbow." (Memorandum in Support at 9-10, Doc. No. 10; Tr. 575) Dr. Starling further explained that "[t]he pain medication that she is required to take hinders her ability to fully function at any Job." (*Id.*) Plaintiff argues that these opinions require remand because they filled "an evidentiary gap from a treating physician" both because they corroborated Dr. Schiffern's opinion and because they represent the only evidence in the record on how Plaintiff's medication affects her ability to work. (*Id.*)

Where new evidence conflicts with record evidence and no fact finder has made findings as to that evidence or attempted to reconcile it with conflicting and supporting evidence in the record, remand may be warranted. *Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011). Because the Court finds remand is warranted on other grounds, it need not determine whether Dr. Starling's opinion would otherwise require vacating the ALJ's decision. However, the ALJ

11

should consider the new evidence and address whether Dr. Starling's medical opinion relates to the relevant time period on remand. *See* 20 C.F.R. § 404.970.

## IV. CONCLUSION

For the foregoing reasons, the Court is unable to conclude that the Commissioner's decision in this case is supported by substantial evidence. As such, the Court will vacate the Commissioner's determination and remand this matter for a new hearing and further consideration consistent with this order. The Court recognizes that it did not address all assignments of error as set out by the Plaintiff. Given that remand is necessary in this case on other grounds, the Court does not find it necessary to address those issues at this time. The ALJ, however, may consider these additional assignments of error on remand.

## ORDER

**IT IS, THEREFORE, ORDERED** that

(1) Plaintiff's Motion for Summary Judgment be **GRANTED**;

(2) Defendant's Motion for Summary Judgment be **DENIED**;

(3) the decision of the Commissioner, denying the relief sought be **VACATED**; and

(4) this matter be remanded for further proceedings consistent with this Order.

Signed: February 17, 2016

Graham C. Mullen
United States District Judge